**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **CANAL INDEMNITY COMPANY,** | |
| **Plaintiff,** | |
| **v.** | **1:12-cv-2206-WSD** |
| **VERNETTA BRADLEY, JOHN WISE, and GEORGIA MESSENGER SERVICE, INC.,** | |
| **Defendants.** | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Canal Indemnity Company's ("Plaintiff" or "Canal") Motion for Summary Judgment [25], and Defendant Georgia Messenger Service, Inc.'s ("GMS") Motion for Summary Judgment [26].

## I.    BACKGROUND

This is an insurance coverage dispute in which Canal seeks a declaratory judgment that the Commercial General Liability Insurance Policy (the "Policy") it issued to GMS does not provide coverage for claims asserted in a separate action ("Underlying Action") brought by Vernetta Bradley ("Bradley") against John Wise ("Wise") and GMS for bodily injury resulting from the September 20, 2005, alleged assault and battery of Bradley by Wise (the "Bradley-Wise Incident").

A.    <u>The Underlying Action</u>

On September 20, 2005, Bradley was working as a security guard at the Palisades Office Park, located at 5901 B Peachtree Dunwoody Road, Atlanta, Georgia (the "Office Park").  Wise, performing courier services for GMS, parked his delivery vehicle in a restricted area at the Office Park and Bradley asked him to move it.  Wise did not comply and entered an office building to make a delivery. Bradley kneeled at the rear of Wise's vehicle and began to install a vehicle "boot." Wise exited the office building, saw her "booting" his vehicle, and, Bradley alleges, "viciously assault[ed] [Bradley], kicking her in the head in a violent and repeated manner causing her body to fall to the ground at which time her head struck the pavement."  (Compl. in Underlying Action [1] at 3-4).

On October 4, 2005, Canal and GMS executed a "Non-Waiver Agreement," which provides:

<u>NON-WAIVER AGREEMENT</u>

Reason(s) for executing this Instrument is (are) as follows:

Bodily injury claimed by Vernette [sic] Bradley may be the result of intended actions on behalf of the Insured's employee.

As well as any other reason or reasons which are now known or which may become known in the future.

IT IS AGREED that any action taken heretofore by the insurance company . . . or any of [its] representatives, signing this agreement in ascertaining the amount of the actual case value; and the

amount of the loss and damages which occurred on September 20, 2005, at [the Office Park], and investigating the cause thereof, shall not waive or invalidate any of the conditions of the policies of insurance.

. . .

THE SOLE OBJECT AND INTENT of this agreement is to provide for the determination of the amount of the actual cash value and the amount of the loss and damage, and an investigation of the cause thereof, without regard to the liability, if any of the said insurance companies.

(Def's Statement of Material Fact ("DSMF") [26.2] ¶¶ 4-5; [28.1 at 61]).

In January 2006, Bradley filed her complaint in the Underlying Action in the State Court of Fulton County.  Bradley alleged that Wise was employed by GMS at the time of the incident on September 20, 2005, that Wise and GMS are liable to Bradley for damages arising from the assault and battery, and that GMS is liable to Bradley for damages arising from its negligence in employing Wise.  (DSMF ¶ 8).

GMS sent a copy of the complaint in the Underlying Action to its insurance agent, Southeastern Specialty Underwriters, Inc. ("Southeastern"), but Southeastern failed to forward the complaint to Canal.  (Id. ¶ 9).  GMS did not file an answer, and on May 16, 2006, Bradley moved for default judgment.  (Id.).  On May 17, 2006, GMS, through its attorney Jason Grech ("Grech"), moved to open the default and filed a proposed answer.  (Id. ¶ 11).  GMS's motion to open the default was denied and GMS moved for reconsideration.  At some point, Canal

3

retained the firm of Harper, Waldon & Craig to defend GMS and Prout was substituted as counsel for GMS.  (Id. ¶ 12).

On September 26, 2006, Grech asked Canal to reimburse GMS for the legal fees it had incurred defending the Underlying Action before Canal retained defense counsel.  (Id. ¶ 13).

On December 19, 2006, Canal sent Grech a letter (the "December 19th Letter") "to respond to [his] letter, and to advise [him] of Canal's position regarding insurance coverage in this case."  (Id. ¶ 14).  The December 19th Letter states:

> Based upon Canal's investigation, it appears that GMS was served with suit papers on or about March 6, 2006. . . . It was apparently "discovered" sometime in May of 2006 that no answer had been filed on behalf of GMS and that the case was in a posture of default.  Your firm filed a Motion to Open Default shortly thereafter along with a proposed Answer.  Canal, while undertaking to investigate the claim, engaged the firm of Harper, Waldon & Craig to continue the efforts to open the default and otherwise defend GMS in the action.
>
> . . .
>
> Pursuant to the [P]olicy . . . it was the obligation of GMS to provide timely notice to Canal of any loss and, more particularly, of the receipt of suit papers. . . .
>
> Though GMS did forward the suit papers to [Southeastern], Southeastern failed to transmit the papers to [Canal]. . . . Because Southeastern is the agent of your insured, not of Canal [] there has been a breach of the insurance contract, including but not limited to, [the Policy] provisions regarding notice of suit papers.

4

> Canal will continue to provide a defense to GMS at this time,
> but Canal reserves its right to deny coverage for indemnity or defense
> of the above-styled action.
>
> Because we are continuing to investigate this matter and
> providing a defense only through reservation of rights, Canal is not in
> a position currently to reimburse your client for attorneys' fees
> incurred prior to the engagement of Harper, Walton & Craig.

(December 19th Letter [28.9 at 2-3]).

On February 27, 2007, the Fulton County State Court granted GMS's

motion for reconsideration and opened the default.  (DSMF ¶ 17).  On November

19, 2007, Bradley voluntarily dismissed the Underlying Action without prejudice.

On March 3, 2008, Bradley filed in the State Court of Fulton County a

renewed complaint, reasserting the same claims for negligence against GMS, and

assault and battery against GMS and Wise, arising from the September 20, 2005,

incident.[1]  (Id. ¶ 19).  Canal again retained Harper, Walton & Craig to defend GMS

in the Underlying Action.  (Id. ¶ 20).

On February 9, 2010, GMS was granted summary judgment on Bradley's

negligence claims.  The only claims remaining in the Underlying Action are

Bradley's claims for assault and battery against Wise and GMS.[2]  The Underlying

Action is stayed while this declaratory judgment action is pending.

---

[1]     No. 2008EV004203H.

[2]     The trial court denied GMS's motion for summary judgment and GMS
appealed.  The Georgia Court of Appeals reversed, granting summary judgment for

5

B.   The Policy and the Current Dispute

On July 18, 2005, Canal issued Commercial General Liability Policy Number GL22280 (the "Policy") to GMS for the policy period of July 18, 2005 to July 18, 2006.  (Pl's Statement of Material Facts ("PSMF") [25.2] ¶ 16).  GMS is the only named insured on the Policy.  (Id. ¶ 17).

The Policy provides certain liability coverage for "occurrences," which are defined as "accidents."  It is undisputed that the Policy specifically disclaims liability arising from intentional torts, which are not accidents and fall within an express provision excluding coverage for "expected or intended" bodily injury. The Policy's Expected or Intended Injury Exclusion provides:

> 2.   Exclusions
>      This insurance does not apply to:
>      a.   Expected Or Intended Injury
>           "Bodily injury["] or "property damage" expected or
>           intended from the standpoint of the insured.

(PSMF ¶ 21).

---

GMS on Bradley's negligence claims and remanding the assault and battery claims with direction to consider certain deposition transcripts, relied on in the parties' trial briefs but which were not filed with the trial court before it entered its order, to determine whether Wise was an employee of GMS, and if so, whether he was acting within the scope of his employment at the time of the September 20, 2005, incident.  See 690 S.E.2d 888 (Ga. Ct. App. 2010).

On remand, the trial court again denied GMS's motion for summary judgment, finding that genuine issues of material fact exist regarding whether Wise was an employee of GMS such that GMS could be held liable for Bradley's injuries.  The Georgia Court of Appeals affirmed on July 12, 2011, and denied reconsideration on July 27, 2011.  715 S.E.2d 699.  On January 9, 2012, the Georgia Supreme Court denied certiorari.

On June 26, 2012, Canal filed its Complaint in this action [1.4] seeking a declaratory judgment that the Policy does not provide coverage for the allegations in the Underlying Action, including based on the Expected or Intended Injury Exclusion.

On August 30, 2013, the Court granted Canal's motion for default judgment against Bradley and Wise.  (Order of Aug. 30, 2013 [37]).

On March 29, 2013, Canal and GMS filed cross-motions for summary judgment.  Canal argues that the claims asserted by Bradley as a result of the Bradley-Wise Incident are intentional acts excluded from coverage by the Policy. GMS argues that Canal waived its right to deny coverage for the conduct alleged in the Bradley-Wise Incident.

## II.    DISCUSSION

### A.    Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

8

B.   <u>Analysis</u>

    *1.   Whether Canal waived its right to deny coverage*

Under Georgia law, "risks not covered by the terms of an insurance policy, or risks excluded therefrom, while normally not subject to the doctrine of waiver and estoppel, may be subject to the doctrine where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage."  <u>World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.</u>, 695 S.E.2d 6, 9 (Ga. 2010) (citations omitted).  "The insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position."  <u>Id.</u>  "At a minimum, the reservation of rights must fairly inform 'the insured that, notwithstanding [the insurer's] defense of the action, it disclaims liability and does not waive the defenses available to it against the insured.'"  <u>Id.</u> at 10 (quoting <u>State Farm Mut. Auto. Ins. Co. v. Anderson</u>, 123 S.E.2d 191 (Ga. Ct. App. 1961)).  The reservation of rights "should also inform the insured of the specific basis for the insurer's reservations about coverage," <u>id.</u>, but an insurer "is not required to 'list each and every basis for contesting coverage in the reservation-of-rights letter before [it can] raise such in the declaratory judgment action,'" <u>Kay-Lex Co. v. Essex Ins. Co.</u>, 649 S.E.2d 602, 608 (Ga. Ct. App. 2007) (quoting <u>Gov't Emp. Ins. Co. v. Progressive Cas. Ins. Co.</u>, 622 S.E.2d 92, 96 (Ga. Ct. App. 2005)).

The undisputed evidence shows that, on October 4, 2005, GMS and Canal executed the Non-Waiver Agreement, which provides:

## NON-WAIVER AGREEMENT

Reason(s) for executing this Instrument is (are) as follows:

Bodily injury claimed by Vernette [sic] Bradley may be the result of intended actions on behalf of the Insured's employee.

> As well as any other reason or reasons which are now known or which may become known in the future.

> IT IS AGREED that any action taken heretofore by the insurance company . . . or any of [its] representatives . . . in ascertaining the amount of the actual case value; and the amount of the loss and damages which occurred on September 20, 2005, at [the Office Park], and investigating the cause thereof, shall not waive or invalidate any of the conditions of the policies of insurance.

> . . .

> THE SOLE OBJECT AND INTENT of this agreement is to provide for the determination of the amount of the actual cash value and the amount of the loss and damage, and an investigation of the cause thereof, without regard to the liability, if any of the said insurance companies.

(Non-Waiver Agreement [28.1 at 61]).

The Non-Waiver Agreement states that the "object and intent" of the agreement is to provide for an investigation of the Bradley-Wise Incident, without regard to Canal's liability, if any, and that one of the reasons for executing the Non-Waiver Agreement is because Bradley's injuries "may be the result of *intended* actions on behalf of [GMS's] employee." (Id.) (emphasis added). It is

10

undisputed that the Policy specifically precludes coverage for an "expected or intended injury."  The "Non-Waiver Agreement" thus fairly informs GMS that Canal, in determining "the amount of the actual case value," "the amount of the loss and damage," and "investigating the cause thereof," "shall not waive or invalidate any of the conditions of the policies of insurance."  The reason for executing the Non-Waiver Agreement—that the "[b]odily injury claimed by Vernett[a] Bradley may be the result of intended actions on behalf of the Insured's employee"—incorporates terms and language used in the Expected or Intended Injury Exclusion in the Policy.[3]

Several weeks after Grech demanded Canal reimburse GMS for the legal fees GMS incurred before Canal assigned counsel to represent GMS in the Underlying Action, Canal sent its December 19th Letter stating that Canal specifically reserved its right to deny coverage under the Policy notwithstanding its

---

[3]    That the vice-president and operations manager of GMS both thought that Prout had been retained by Canal to represent GMS at the time he presented the Non-Waiver Agreement for their signatures, discredits GMS's assertion that the Non-Waiver Agreement is not valid because it was executed before Canal assumed GMS's defense. GMS appears to argue that Canal was required to execute a second waiver or reservation of its rights immediately before providing a defense to its GMS, despite a bilateral agreement executed days after the alleged incident and which specifically references a potential policy exclusion to coverage for that incident.  GMS fails to cite any authority for its position, and the Court finds that the Non-Waiver Agreement fairly and timely informed GMS that Canal was not waiving the defenses available to it, including that "[b]odily injury claimed by Vernette [sic] Bradley may be the result of intended actions on behalf of [GMS's] employee."

agreement to defend GMS in relation to the Bradley-Wise Incident.  The December

19th Letter states that "there has been a breach of the insurance contract, including

but not limited to the [Policy] provisions regarding notice of suit papers," that

"Canal will continue to provide a defense to GMS at this time, but Canal reserves

its right to deny coverage for indemnity or defense of the above-styled action," and

that, "[b]ecause we are continuing to investigate this matter and providing a

defense only through reservation of rights, Canal is not in a position currently to

reimburse [GMS] for attorneys' fees incurred prior to the engagement of Harper,

Walton & Craig."   (December 19th Letter [28.9 at 2-3]).  The December 19th

Letter fairly informs GMS that Canal denies coverage for the Bradley-Wise

Incident, including because GMS failed to give timely notice as required by the

Policy, and that "Canal reserves its right to deny coverage for indemnity or

defense." [4]

---

[4]     It seems reasonable that an insurer first would want to investigate an
incident to determine if it would assume the defense or defend under a reservation
of rights.  To the extent GMS argues that the December 19th Letter is untimely
because it was sent after Canal started defending GMS, Canal's limited
participation between receiving notice of the Underlying Action and sending the
December 19th Letter is not sufficient to waive Canal's rights to assert
noncoverage.  See Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio,
319 S.E.2d 445 (Ga. 1984) (insurer's notice of appearance as counsel for insured in
underlying lawsuit was not a waiver of, and did not estop insurer from asserting
defense of noncoverage where insurer did not answer suit on behalf of insured,
entered an appearance only to protect its rights, and gave notice to insured of its
reservation when discovery was commenced in action); Preferred Risk Mut. Ins.

GMS may also argue that Canal has waived defenses not listed in the December 19th Letter.  The Court notes, however, that an insurer "is not required to 'list each and every basis for contesting coverage in the reservation-of-rights letter before [it can] raise such in the declaratory judgment action.'"  Kay-Lex, 649 S.E.2d at 608 (quoting Gov't Emp. Ins. Co., 622 S.E.2d at 96).  The Court notes further that, "[b]y not objecting to the reservation of rights letter and by permitting [Canal] to go forward with its defense of the suit, [GMS] is deemed to have consented to the letter's terms."  Id. (quoting Jacore Sys. v. Cent. Mut. Ins. Co., 390 S.E.2d 876 (Ga. Ct. App. 1990)).[5]

---

Co. v. Southern Guar. Ins. Co. of Georgia, 353 S.E.2d 590 (Ga. Ct. App. 1987) (filing an answer to avoid default is not a sufficient "defense" to create waiver or estoppel) judgment rev'd on other grounds, 359 S.E.2d 665 (Ga. 1987); compare VFH Captive Ins. Co. v. Cielinski, 581 S.E.2d 335 (Ga. Ct. App. 2003) (jury authorized to find insurer was estopped from denying coverage where evidence showed insurer "assumed control of" defenses to the action, including settlement discussions, but failed to inform insured until time of trial that representation was with a reservation of rights); World Harvest, 695 S.E.2d 6 (where an insurer assumes and conducts an initial defense without effectively notifying the insured that it is doing so with a reservation of rights, insurer is estopped from asserting defense of noncoverage).

[5]   GMS relies on Hoover v. Maxum Indem. Co., 730 S.E.2d 413 (Ga. 2012), to support that a letter containing boilerplate language reserving "the right to disclaim coverage on any other basis that may become apparent as this matter progresses" is not a sufficient reservation of rights.  In Hoover, the Georgia Supreme Court found that an insurer's denial letter was not an effective reservation of rights including because an insurer cannot deny a claim and refuse to provide a defense, and at the same time reserve the right to assert a different defense to the claim in the future. Id. at 416.  The court explained that "a reservation of rights is only available to an insurer who undertakes a defense while questions remain about the validity of the

The Court finds that the Non-Waiver Agreement and the December 19th Letter fairly informed GMS that, notwithstanding its investigation of the Bradley-Wise Incident and its defense of GMS, Canal disclaims coverage and has not waived the defenses available to it against GMS.[6, 7]

---

coverage." <u>Id.</u>  The court also stated that, even if the insurer could deny coverage and reserve its right to assert a different difference, the letter reserving "the right to disclaim coverage on any other basis that may become apparent as this matter progresses" was ambiguous because "[o]nce the claim ha[d] been denied, the matter would not progress and [the insurer] would have no need to obtain additional information." <u>Id.</u> at 417.  Here, Canal has not denied coverage and has continued to provide a defense to GMS under a timely, and sufficiently specific, reservation of rights.  <u>Hoover</u> does not apply.

[6]    GMS's reliance on <u>Richmond v. Georgia Farm Bureau Mut. Ins. Co.</u>, 231 S.E.2d 245 (Ga. Ct. App. 1976), to support that Canal waived its policy defenses by delaying in bringing this declaratory judgment action, also is misplaced.  <u>Richmond</u> "set forth a procedure by which an insurer could challenge policy coverage through a declaratory judgment where the insured refused to consent to a defense under a reservation of rights; this procedure included the requirement that the insurer seek immediate declaratory relief."  <u>Boatright v. Old Dominion Ins. Co.</u>, 695 S.E.2d 408, 413 (Ga. Ct. App. 2010) (citation and punctuation omitted).  Here, Canal has defended GMS pursuant to a reservation of rights and there is no evidence to support that GMS objected to the reservation. The Court notes further that "the amount of time that ha[s] passed and the stage of litigation reached in the [U]nderlying [Action [are] not relevant to [Canal's] ability to challenge policy coverage, because [Canal] 'was not required to file a declaratory judgment action within any particular time period, or at all, to avoid estoppel.'"  <u>See Sims v. First Acceptance Ins. Co. of Georgia, Inc.</u>, 745 S.E.2d 306, 309 (Ga. Ct. App. 2013) (quoting <u>Boatright</u>, 695 S.E.2d at 413).

[7]    If GMS argues that Canal is estopped from relying on the Non-Waiver Agreement and December 19th Letter because Canal failed to mention them in its Complaint, the Court observes that estoppel to deny coverage is an affirmative defense and Canal was not required to raise it.  <u>See State Farm Mut. Auto. Ins. Co. v. Wheeler</u>, 287 S.E.2d 281 (Ga. Ct. App. 1981).

### 2.     *Coverage under the Policy*

Canal asserts that it is not required to provide coverage for the assault and battery claims alleged in the Underlying Action because the Policy expressly disclaims coverage for bodily injury "expected or intended from the standpoint of the Insured."  In its Response, GMS does not address this basis for noncoverage and the Court deems Canal's motion for summary judgment on this ground unopposed.  See Welch v. Delta Air Lines, Inc., 978 F.Supp. 1133, 1137 (N.D. Ga. 1997) (non-movant's failure to respond to movant's argument alone entitles movant to summary judgment on these claims); see also LR 7.1(B), NDGa. ("Failure to file a response shall indicate that there is no opposition to the motion.").

The renewed complaint in the Underlying Action asserts a claim against Wise and GMS for assault and battery, in violation of O.C.G.A. § 16-5-23.1. (Renewed Compl. [1] at 4).  O.C.G.A. § 16-5-23.1 provides that a "person commits the offense of battery when he or she *intentionally* causes substantial physical harm or visible bodily harm to another."  (emphasis added); see also O'Dell v. St. Paul Fire & Marine Ins. Co., 478 S.E.2d 418, 420 (Ga. Ct. App. 1996) (holding that assault and battery "are by their nature intentional").  Because assault and battery are intentional acts, the Policy's Expected or Intended Injury

Exception precludes coverage for the assault and battery claims asserted in the

Underlying Action.  Canal's Motion for Summary Judgment is therefore granted.[8]

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Canal Indemnity Company's

Motion for Summary Judgment [25] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Georgia Messenger Service,

Inc.'s Motion for Summary Judgment [26] is **DENIED.**


**SO ORDERED** this 28th day of March, 2014.



WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[8]      Having found that GMS is not entitled to coverage under the Policy for the assault and battery claims asserted in the Underlying Action, the Court does not consider Canal's remaining grounds for noncoverage.